UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

M<small>ARREON</small> M<small>C</small>G<small>LORY</small> et al.,

            Plaintiffs,

v.

M<small>ICHIGAN</small> D<small>EPARTMENT OF</small>
C<small>ORRECTIONS</small> et al.,

            Defendants.
_____/

Case No. 2:20-cv-81

Honorable Janet T. Neff

**OPINION**

This is a civil rights action brought by six state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim against Defendants Michigan Department of Corrections, Heidi Washington, and Kenneth McKee. The Court will also dismiss Plaintiffs' First and Fourteenth Amendment claims against Defendants Brown and Miller.

**Discussion**

I. **Factual allegations**

Plaintiffs are presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which they complain occurred at that facility and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiffs sue the MDOC, MDOC Director Heidi Washington, MDOC Assistant Director Kenneth McKee, KCF Warden Mike Brown, and URF Warden Unknown Miller.

Plaintiffs allege that on March 25, 2020, while they were confined at KCF, prisoner Coleman, who was housed in the same cube with Plaintiffs, was diagnosed as having COVID-19. Coleman was taken to the hospital and subsequently died. Shortly thereafter, Plaintiffs were transferred to URF and were placed in segregation to be quarantined. Plaintiffs were placed in a cell with another prisoner, who had also been exposed to someone with COVID-19. While in segregation, Plaintiffs were not allowed access to either the Bible or the Quran and were not allowed a shower or a change of clothes for the first five days. Nor were Plaintiffs allowed any communication with their families, cleaning supplies for their cell—which contained a toilet and a sink—toothpaste, or deodorant. Plaintiffs were given one bar of soap for the shower after the first five days. Plaintiffs were allowed a total of two showers over eight days.

Plaintiffs claim that Defendants' conduct violated their rights under the First, Eighth, and Fourteenth Amendments. Plaintiffs seek compensatory and punitive damages.

II. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. MDOC as Defendant

Plaintiffs may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). Therefore, Plaintiffs' complaint seeks monetary relief against a defendant who is immune from such relief, Plaintiffs' claims against the MDOC are properly dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiffs' claims against the MDOC are also properly dismissed for failure to state a claim.

### IV. Respondeat Superior

Plaintiffs' claims against Defendants Washington and McKee are based soley on their positions as Director and Assistant Director of the MDOC. Plaintiffs fail to make specific

4

factual allegations against Defendants Washington and McKee. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs have failed to allege that Defendants Washinton and McKee engaged in any active unconstitutional behavior. Accordingly, they fail to state a claim against them.

**V.     First Amendment claims**

Plaintiffs allege that their First Amendment rights were violated because they were not allowed to possess a Bible or Quran during their eight-day quarantine. The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Fourteenth Amendment incorporates the First Amendment's protections against states). While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S.

342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiffs must establish that: (1) the belief or practice they seek to protect is religious within their own "scheme of things," (2) that their belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

In this case, Plaintiffs' First Amendment free exercise claims are entirely conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In their complaint, Plaintiffs fail to allege specific facts regarding their religious beliefs, much less whether those beliefs required them to have access to the Bible or the Quran. The deprivation of religious books for a period of eight days, without more, is insufficient to constitute a violation of the First Amendment.

Plaintiffs also allege that the inability to call or write to family over the eight-day period violated their First Amendment associational rights. Prisoners retain their First Amendment rights to communicate with family and friends, however, that right is not unlimited. *Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir. 1994). An inmate has no right to unlimited telephone use. *Id.* Indeed, "a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). As held by the United States Supreme Court, an institution may place limits on prisoner contact with family and friends if such limits "bear a rational relationship to legitimate penological interests," such as rehabilitation and the maintenance of

6

security and order.  *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (withdrawing visitation privileges for a period of time to effect prison discipline is not a dramatic departure from accepted standards for conditions of confinement).

In this case, Plaintiffs were held in a cell for a period of eight days without access to a phone or mail because of a need to quarantine them after their potential exposure to COVID-19.  The phone and mail restriction during Plaintiffs' quarantine appears to be rationally related to the need to prevent possible spread of COVID-19.  Moreover, the restriction does not appear to have lasted beyond the eight-day quarantine.  The Court concludes that Plaintiffs' rights of free association were not therefore unnecessarily or unduly restricted.

## VI. Due process

Plaintiffs state that their due process rights were violated, but fail to specify the manner in which their rights were violated.  As noted above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.  However, liberally construing Plaintiffs' claims, the Court assumes that Plaintiffs are attempting to assert a substantive due process claim.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002).  "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).  The Sixth

7

Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiffs' claims. As discussed below, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiffs concerning their claim regarding conditions in the quarantine cell. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Consequently, Plaintiffs' substantive due process claim will be dismissed.

## VII. Equal protection

Plaintiffs make a conclusory assertion that their right to equal protection was violated by their treatment during quarantine. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiffs do not suggest that they are members of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiffs' claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove their equal protection claim, Plaintiffs must demonstrate "intentional and arbitrary discrimination" by the state; that is, they must demonstrate that they "ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In this case, Plaintiffs fail to allege that they were treated differently than other similarly situated prisoners. Therefore, Plaintiffs' equal protection claim is properly dismissed for lack of merit.

## VIII. Eighth Amendment

Plaintiffs allege that they were kept together in one cell without soap or cleaning supplies. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The Eighth Amendment's deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must both "know[] of and

10

disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit squarely held that the significant risk posed by COVID-19 met the objective prong of the deliberate-indifference standard. *Id.* at 840. In addition, in evaluating the subjective component, the *Wilson* court concluded that, because the seriousness of the risk of COVID-19 was obvious, Defendants unquestionably were aware of the risk. *Id.*. As in *Wilson*, therefore, the remaining inquiry before this Court is whether Defendants, by their actions, "responded reasonably to th[is] risk." *Id.* at 841 (quoting *Farmer*, 511 U.S. at 844).

During the current COVID-19 pandemic, the MDOC has recognized the risk posed by COVID-19 and has taken significant measures to mitigate contamination and exposure, in order to limit the threat posed by COVID-19, including the following:

**Personal Protective Equipment, cleaning and mitigation measures**
- Michigan State Industries has produced masks for all prisoners and correctional facility staff to wear. Each employee and prisoner received three masks each and the masks can be laundered and worn again. Facility staff are also permitted to bring their own PPE, such as masks, gloves and gowns. Staff are expected to wear their mask during their entire shift and prisoners are expected to also wear their masks at all times, except while eating, sleeping or showering. Michigan State Industries is also manufacturing gowns, protective eyewear and protective suits.
- All MDOC staff transporting a prisoner on or off grounds are required to be dressed in full personal protective equipment (PPE), which is available for those employees.
- All facilities have received approval from the regional sanitation officer to use bleach during facility cleaning. Facilities have enhanced cleaning efforts and

11

- cleaning products are available to clean commonly-used areas and phones before and after use. Cleaning efforts have been doubled at facilities with vulnerable prisoner populations. We have increased our production of soap and ensured that all prisoner areas and bathrooms have plentiful access to soap. Soap has been distributed to prisoners and prisoners have been told that if they need more soap they only need to ask. Additional soap will be provided at no charge. CDC posters detailing proper hygiene practices have been posted in correctional facilities and have also been recreated digitally so they play on TV screens throughout our facilities. These are the same posters you will see in your community and throughout State of Michigan office buildings.
- Movements have been modified to help facilitate social distancing and the number of prisoners attending classes and meals has been reduced so prisoners can be seated farther apart. Prisoners and staff are frequently reminded of the need for social distancing and prisoners are instructed not to gather in groups on the yard. Activities such as basketball and weight pit have been suspended to encourage social distancing, as well. There are also markers and cones set up for med lines and in the chow hall as a visual reference for prisoners on how far apart they should stand.
- The department has been leading the nation when it comes to consistent testing of the prisoner population when they have symptoms. Following the completion Friday, May 22, of testing prisoners at Michigan Reformatory in Ionia for COVID-19, the Michigan Department of Corrections has completed its goal of testing every prisoner in its system.

*See* https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337. The MDOC also issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and issued a revised DOM on the subject on May 26, 2020, *see* MDOC DOM 2020-30R2 (eff. May 26, 2020), and again on May 27, 2020, *see* MDOC DOM 2020-30R3 (eff. May 27, 2020) (serially outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer). Thus, the MDOC recognized the need for significant increases in sanitary practices and implemented those practices by way of policy.

Notwithstanding these official policies, however, Defendants allegedly failed to provide soap or cleaning supplies to Plaintiffs for five days, despite the fact that Plaintiffs all had previously been exposed to persons diagnosed with COVID-19 and all shared a cell, using the

same toilet and sink.  Given what is known about the spread of COVID-19, Defendants' refusal to supply Plaintiffs with necessary soap and cleaning supplies during their quarantine is the type of deprivation that arguably implicates the Eighth Amendment.  The Court concludes that Plaintiffs' Eighth Amendment claims are not clearly frivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Heidi Washington, and Kenneth McKee will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiffs' First and Fourteenth Amendment claims against Defendants Brown and Miller.  Plaintiff's Eighth Amendment claims against Defendants Brown and Miller remain in the case.

An order consistent with this opinion will be entered.

Dated:   July 30, 2020                              /s/ Janet T. Neff
                                                    Janet T. Neff
                                                    United States District Judge